Good morning. May it please the Court. My name is Tom Parsons, Stubbs & Schubart on behalf of La Loma Grande, LLC. I believe there are two broad areas that the Court must look at in deciding this case. Mr. Parsons, because there seem to be quite a few issues in here, I'm afraid I'm going to interrupt you. I'm a little hard of hearing. The first thing that I don't quite get is how the CERCLA counterclaim, or the CERCLA claim itself, are in this case at all, or how you can claim to be the prevailing party. The district court dismissed on summary judgment the CERCLA claim, and you'd think that the counterclaim would go at the same moment. Yes, and I can understand that's how this Court should read the opinion below. But if the court were to look, if the trial court were to look at the complaint carefully, the CERCLA counterclaim is not just a CERCLA counterclaim. There's actually three counts. It's denominated as two counts, but there's three. And under the portion of the DEC action of the CERCLA counterclaim, it says arising under CERCLA and arising under Title 28-2201, USC 2201. That's the penumbral DEC action statute that the federal government uses. It is not a federally substantive claim that's being asserted. It is a generic DEC action to resolve an issue between the parties under this Court's concurrent jurisdiction, which is State law. Go back to what the district court did with the CERCLA counterclaim. What did the district court do with it? Well, it – the CERCLA – actually, what it did is it adjudicated it on the merits. No, no. No, no. Under Rule 41. Well, no. Tell me what it – don't tell me what you characterize as what it did. What did it say it did? It said that the – It said that the CERCLA counterclaim goes away because you lose on your CERCLA claim, right? That's correct. And so in the real world, that's not you winning on the CERCLA counterclaim. That's the Court saying, since you lost on your CERCLA main claim, I don't even have to get to the CERCLA counterclaim. Isn't that really what the district court did? Well, it's – it's how we look at CERCLA from a – initiated by the private landowner as opposed to when it's initiated by the government. They are different. They are different because the remedies are completely different. But did the district court – district court didn't say, my God, you're right. All the stuff in the CERCLA counterclaim is – is garbage or doesn't win. You – you've defeated it. The district court said, I don't have to get to it because it was a conditional counterclaim. It was – it was a counterclaim conditioned on you winning on – on your CERCLA claim, and you didn't win on your CERCLA claim, so I don't have to get to it. I wish it had been that clear, and I wish I could afford to take the gamble that you propose, that during the preparation of the case, the naming of 21 witnesses against me, mostly EPA, mostly environmental cases, with eight attorneys from the Department of Justice, Environmental Resources, not just the torts section, I could not afford to take the gamble the Court suggests. Even if this is a – even if you couldn't afford to take the gamble during the course of the trial, don't you have to point to a judgment that you received in order to get mandatory fees? No. And this goes back to the Buchanan case. I mean, the detail with which this Court and the Supreme Court goes into substantial justification of causes is phenomenal. It's fantastic. It's like it wasn't done below. Buchanan has been effectively vitiated by congressional action, and the dissent now stands. If you look at Buchanan, Westlaw says that there are 217 negative cases citing it now. Now, doesn't the Ninth Circuit in Perez-Arreano say, we therefore hold that a prevailing party under EJIA must be one who gained a judgment or consent decree, a material alteration of the legal relationship, a judgment or a consent decree? And I don't see how you find – even if you had to – even if you had to go through the pain in the neck of preparing to defend against the Circle Claim, I don't see where you find a judgment that – as you're winning. Well, I think that you're advancing the Buchanan majority, the 5-4 decision, and that's – the courts have retreated from that. This Court has retreated from it in the – In what case? First Amendment Coalition Case No. 2. And so we look to – we look at substantive – we look to was their claim reasonably necessary, and did it advance a substantive causal effect. And that – they're to be held to the same standard I would be if I brought the case. And what was the substantive causal effect here? Well, we are – the U.S. is out remediating the site right now. They terminated the use of the range upon the filing of our administrative claim. As a result of this judgment? As a result of this case. And that – the judgment is not – first of all, I would argue there is a judgment because Rule 41a13 says that the dismissal, her order of dismissal, operates as an adjudication on the merits. So I win that argument, Your Honor, respectfully. How about on the prescriptive easement? How did you win there? Well, this is terribly important. The prescriptive easement argument is part of two arguments, two sides of one coin. The first argument was that they had consent by contract. And if you have consent by – No, let's – prescriptive easement is different from consent. I am. If you have – if you are going to plead consent by contract, you cannot claim prescription in Arizona. They are mutually inconsistent. Yes, we may plead remedies in the alternative. We may plead theories in the alternative. But that's a policy that they elected. That is – But they gave up on the – They did not. On the preemptive easement. Sixteen times I cite in the record, in the brief, where they continued in an opening – Let me continue to argue. But at the preliminary hearing, they gave up on their claim. No. I do not believe so. I point out in the record 16 times, during opening, during the trial, where they asserted the prescriptive rights. Okay. And then how about the implied consent? How do you win there? I'm not going to – I mean, I think the implied consent is wrong, but the Court's going to give deference to the Court's findings in that regard. I do win unimplied consent because no one gives consent to the pollution, the criminal pollution of their site, to potential exposure to third-party claims, to potential fines, to the cost of cleanup, to a claim for attorney's fees, and a potential lien. I return the Court to 28 U.S.C. 2201, which is in the complaint that was resolved by Rule 41. There is – Sotomayor, can you direct me to where the district court adjudicated the counterclaim? It ignored the counterclaim. Well, no, direct – that's not what I'm asking. Can you direct me to a judgment in which the district court adjudicated? The last page of its findings of fact and conclusions of law has the dismissal of the counterclaim for the first time. Well, that's right, but it's based on the other side's dropping of it. Is it not? The other side – I'm looking at the pretrial conference and the other side says, Your Honor, we're not pursuing the counterclaim. It was one of eight attorneys that made that comment, Your Honor. The others pursued it in full, robustly, much to the – It wasn't tried. Well, the DEC action was tried. We succeeded, and I believe the standard isn't I don't need a judgment specifically saying you've altered your position. I have to see that they actually altered their position during trial, which they did. I have to see that there's post-litigation changes. Well, tell me how they tried the counter – you tried the – you tried your CERCLA action. I tried the DEC action. Yeah, you tried your tort case. You lost on your CERCLA action. I'm not here on the tort case at all. I understand. I'm trying to figure out how any of the CERCLA case was tried. Well, at the end of the day, there is res judicata and at least collateral estoppel on the U.S. Government ever coming against my client for a counterclaim. That's not the question I asked. I want it. That's not the question I asked. I'm asking tell me where the CERCLA case was tried. All right. Well, the United States came at us. The very initial part of the case, the United States came at us and said, we're filing this counterclaim in a way that will divest this court of jurisdiction. Tried. Tried means to me. Let me define tried for you so that we're not quibbling with each other. Fair enough. Tried means to me that we went to trial on the claim. Did you go to trial on this? During the trial, they raised the prospect. Their witnesses said that they had an EPA they had a filed action for a CERCLA site. And when we drilled down on that, and that was a full day or two days of testimony where I called Cindy Maxson in response, and we learned during the trial that the form necessary, there's a necessary form to institute the CERCLA claim has to have the signatures of the agency and the signature of the EPA. That form had, from it, removed the signature block from the EPA. It was a dishonest, in my view, a dishonest masking of the fact that there was no CERCLA counterclaim. That effort was tried, and we won on that point. The court actually offered to have us seek redress once that was discovered. Let me ask either of my, either of you have additional questions? I do not. You do? Okay, go ahead. I don't, honestly, I don't. Okay, your time has expired, counsel. I know you have lots and lots to say, but unfortunately, that is a common problem in oral argument. Let's hear it from the government. Good morning. May it please the court. Sarah Williams for the United States of America. This case arises from Border Patrol's use of an outdoor shooting range before and after the appellant purchased undeveloped, industrial-zoned desert land nearby. The court proceeded to trial on a single tort count, at which only torts attorneys, like myself, appeared for the United States, and the district court held that the Border Patrol had reasonably believed that it had the neighbor's consent to use the shooting range, which operated in an open and obvious manner for decades before it received its first complaint. Now, you tried this, or you pursued this case pretty hard, didn't you? We vigorously defended the tort claim, yes, Your Honor. Did your vigorous defense amount to bad faith? No, Your Honor. All of our efforts were toward defending the tort claim, and as the district court found, all of the arguments that were advanced were substantially justified and well-grounded, in fact, in law. Even though you lost? We did lose. Okay. I just wanted that to appear somewhere in your statement. Yes. That was the very next thing I was going to get to, Your Honor. We were found negligent for negligent trespass. We were found liable for negligent trespass because bullets were not contained on the range. The district court judge entered judgment in the amount of approximately $542,000 for diminution of property value, and that judgment is final. Tell me what the – give me the history of what happened with the CERCLA claim and the counterclaim. The CERCLA claim was dismissed before trial on summary judgment. The Court's opinion on that is in the record at pages 877 to 879. It was a cost-recovery claim, and the district court determined that the appellant didn't have any cost to recover. Right. Now, with respect to your counterclaim, was it conditional? Was it – tell me about your counterclaim, which was, as your colleague points out, eventually is the subject of a judgment saying it's dismissed. So why weren't they successful on your counterclaim? Well, the counterclaim was contingent, and that's at page 955 of the record, if the Court would like to see it itself. The counterclaim was a contingent claim for cost distribution. So when the CERCLA cost-recovery claim went away and it was clear there would be no cost to equitably distribute, there could be no more CERCLA counterclaim. Does it matter, as your opponent says, that some of your theories for why there ought to be contribution may not have been CERCLA-based? In other words, they may have been prescription-based or easement-based or consent-based? No, Your Honor, but because the claim itself was CERCLA-based, none of those theories were ever developed. It was a contingent counterclaim, contingent on cost being recovered. With no costs, there was no reason to discuss the counterclaim at length. Do you have any way in the record of indicating what portion of the government's, what I'll call discovery efforts and requests, pertain to the CERCLA action? It would be very difficult to do that, Your Honor. I can say that the vast majority of it is tort. We always regarded it as a tort claim, but to actually pull out which questions were CERCLA would be difficult. Right, but I mean, just as a ballpark, are we talking 10 percent, 20 percent, 50 percent of the discovery? Probably closer to 2 percent. 2 percent, so de minimis from your perspective. It was. Once the plaintiff, once the appellant testified that it had no costs, there was no reason to pursue the CERCLA cost recovery claim at any length. How did it come up in the trial? CERCLA, the CERCLA counterclaim and the CERCLA cost recovery claim did not come up in the trial. CERCLA was discussed only in relation to the diminution in property value. Because the property is subject to an ongoing CERCLA remediation, then CERCLA is relevant to the value of that property. When will this property be remediated? How much will that remediation cost? Those are relevant to the property damage. But it only came up in that context. It did not come up in the context of a CERCLA cost recovery claim. Had the administrative claim that they made under CERCLA, was that begun before the trial ended? The administrative claim was filed and tort before the trial. I'm not sure I understand, Your Honor. What I'm trying to understand is there was some discussion of it in the trial. They object to it. They claim that's why this is a non-tort aspect. But on the other hand, they made the claim to get the property remediated on an administrative basis. So my question is, was that proceeding while the trial was ongoing? So it could have been a reference to something other than what was part of this action. Yes, the property was evaluated before the case was filed for CERCLA costs. It's, to my knowledge, still sitting today on CLEANED. It's waiting for funding. But all of the CERCLA evaluation and CERCLA process was going on independent of the lawsuit. And was that completed before the trial evaluation? To my knowledge, yes. But it wasn't part of, at the time of the trial, the property is just pending funding. It could be pending for a very long time. We don't know when the property will be remediated. The trial did not affect that. Plaintiff raised a number of CERCLA issues that were ancillary to the case, but none of them went to either, none of them were at all material to the district court's judgment. The district court's judgment on CERCLA relied on a very simple fact. It is that clear. There were no costs. There were no costs to recover. Right. And I'm looking at your counterclaim, paragraph 17. It says, if Law McGrindy is able to establish that we're liable to them, then we ought to allocate costs as final. So it is conditional. Yes, Your Honor. It was conditional. The government also, I'd like to note, has never sought any kind of property interest or ownership interest in the plaintiff's land. This was purely a tort defense. Prescriptive easement and implied consent were raised entirely as tort defenses. The government has not sought and does not want any kind of title to the property. It was a tort claim. And it's applicable under the Federal Tort Claims Act limits, which Congress very carefully set at 25%. With Congress's judgment that 25% would be reasonable and adequate. In this case, that meant that appellant was entitled to receive up to approximately $135,000 in attorney's fees. Congress determined that that was enough. Now, the appellate looks now to the Equal Access to Justice Act to extend and get past the Federal Tort Claims Act limits. But because this was a tort case, and it was only ever a tort case, the Equal Access to Justice Act would only apply in cases of. Well, how about the permissive? Aren't there permissive fees? If counsel can show bad faith, can't he get counsel fees even for a tort claim? Yes, Your Honor. Section B, in rare cases of bad faith and egregious misconduct, he would and could get sanctions. There could be attorney's fees awarded in that circumstance. But that's an exceptional circumstance. And the district court found nothing like that here. She found there was no bad faith in the underlying conduct that border patrol's operation of the range. And she found no bad faith in the conduct of the counsel during litigation. This was not a case, in her mind, for attorney's fees. Does this, does the record reflect any other, if you will, comparable actions by the government in similar situations that involved this level of discovery? Looking at it from the other side's perspective, they just felt like they got overwhelmed with massive government resources, asking for all kinds of things, and they felt taken advantage of. Ultimately, it's all a tort. So there's a limitation on this. But in terms of bad faith, you almost have to look at what the government's normal pattern is. Does the record indicate any other claims that were referred to to show that this one was different in some way than what the government normally does in its response to similar types of actions? No, Your Honor. There's nothing to indicate that this claim was different. This claim was, however, submitted as an $82 million administrative claim. And so the government was defending itself. Ultimately, this judgment was only for $542,000, of which it's much smaller. But when this first came in, the government was defending itself against what it viewed as an $82 million tort claim. And it defended itself, put in its efforts appropriately with that impression. In other words, the government's response was commensurate with what it thought, at least based on the allegations and the complaint, the risk was. Is that fair? Mr. Parsons did not touch upon the issue of taxable costs. And I must, the court has questions. Let me just quickly ask you about that. There's an error of $370 or whatever. Is that something that we can change or do we need to send that back to the district court to correct? Um, it's in her discretion, so I think generally it would go back to her to review the appropriateness of those costs. Although I'm not aware of any errors in her judgment here. I believe her, um, it was within her discretion on taxable costs. Other questions by my colleague? All right. Thank you very much for both. Both counsel, the case just argued is submitted. Thank you very much.
judges: M. Smith, Hurwitz, Eaton